UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY T. T.,[1] | Case No. 8:21-cv-01228-JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    SUMMARY

On July 19, 2021, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

---

[1]Plaintiff's name is partially redacted to protect plaintiff's privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(collectively "Motions").  The Court has taken the Motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order filed on July 19, 2021, at ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 5, 2016, plaintiff filed an application for Disability Insurance Benefits alleging disability since October 5, 2015, due to a foot injury, complex regional pain syndrome ("CRPS"), depression, and anxiety.  (Administrative Record ("AR") 28, 171-77, 187).  The ALJ subsequently examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert.  (AR 40-56).

Plaintiff went back to full time work in April 2019 and reportedly requested a closed period of disability, which the ALJ denied.  (AR 26, 28, 45-46, 82, 254). On September 4, 2020, the ALJ determined that plaintiff had not been disabled through the date of the decision.  (AR 26-36).[2]  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  CRPS and a right foot fracture with residual pain (AR 28-30);[3] (2) plaintiff's impairments,

---

[2]The ALJ's opinion reportedly addressed the periods during which plaintiff did not engage in substantial gainful activity, but found plaintiff not disabled from the alleged onset date through the date of the ALJ's decision.  (AR 28, 35).

[3]The ALJ found "non-severe" plaintiff's anxiety and depression, reasoning that the record showed a lack of mental health treatment, an unremarkable psychiatric consultative examination, and the state agency physicians had found plaintiff's mental impairments non-severe.  (AR 29 (giving great weight to the available opinion evidence); see AR 67-68, 85-86 (state agency physicians finding mental impairments "non-severe"); AR 641-44 (consultative examination finding no limitations)).

considered individually or in combination, did not meet or medically equal a listed impairment (AR 30); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. § 404.1567(b)), with additional limitations (AR 30-34 (giving partial weight to state agency physicians' opinions at AR 69-71, 87-89));[4] (4) plaintiff could not perform his past relevant work (AR 34); (5) plaintiff could perform other work existing in significant numbers in the national economy and therefore was not disabled (AR 35 (adopting vocational expert testimony at AR 53-54)); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 31-34).

On May 10, 2021, the Appeals Council denied plaintiff's application for review.  (AR 1-3).

**III.   APPLICABLE LEGAL STANDARDS**

**A.   Administrative Evaluation of Disability Claims**

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th Cir. 2020); 20 C.F.R. § 404.1505(a).  To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work

///

_____

[4]The ALJ determined that plaintiff would be limited to:  (1) lifting and carrying 20 pounds occasionally and 10 pounds frequently; (2) standing and/or walking for two hours in an eight-hour workday; and (3) sitting for six hours in an eight-hour workday.  (AR 30).

1   which exists in the national economy." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th
2   Cir. 1999) (citing 42 U.S.C. § 423(d)).

3   　　　To assess whether a claimant is disabled, an ALJ is required to use the five-
4   step sequential evaluation process set forth in Social Security regulations. <u>See</u>
5   <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1052 (9th
6   Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R.
7   § 404.1520). The claimant has the burden of proof at steps one through four – *i.e.*,
8   determination of whether the claimant was engaging in substantial gainful activity
9   (step 1), has a sufficiently severe impairment (step 2), has an impairment or
10   combination of impairments that meets or medically equals one of the conditions
11   listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and
12   retains the residual functional capacity to perform past relevant work (step 4).
13   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The
14   Commissioner has the burden of proof at step five – *i.e.*, establishing that the
15   claimant could perform other work in the national economy. <u>Id.</u>

16   　　**B.　　Federal Court Review of Social Security Disability Decisions**

17   　　　A federal court may set aside a denial of benefits only when the
18   Commissioner's "final decision" was "based on legal error or not supported by
19   substantial evidence in the record." 42 U.S.C. § 405(g); <u>Trevizo v. Berryhill</u>, 871
20   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard
21   of review in disability cases is "highly deferential." <u>Rounds v. Commissioner of</u>
22   <u>Social Security Administration</u>, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and
23   quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence
24   could reasonably support either affirming or reversing the decision. <u>Trevizo</u>, 871
25   F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it
26   must be affirmed if the error was harmless. <u>See</u> <u>Treichler v. Commissioner of</u>
27   <u>Social Security Administration</u>, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error
28   harmless if (1) inconsequential to the ultimate nondisability determination; or (2)

ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

**IV. DISCUSSION**

Plaintiff contends that the ALJ erred: (1) by improperly rejecting his subjective symptom testimony and statements; (2) in evaluating the medical opinion evidence; and (3) in finding plaintiff's psychological impairment(s) non-severe at step two of the sequential evaluation process. (Plaintiff's Motion at 2-///

13).  For the reasons stated below, plaintiff has not shown that a reversal or remand is required in this case.

### A.   The ALJ Did Not Materially Err in Considering Plaintiff's Subjective Statements and Testimony

Plaintiff contends that the ALJ erred by failing to provide adequate reasons for rejecting plaintiff's testimony and statements.  See Plaintiff's Motion at 3-8.

### 1.   Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the sequential evaluation process.  20 C.F.R. § 404.1529(a), (d).  Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.  20 C.F.R. § 404.1529(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[5]

When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities.  See SSR 16-3p, 2017 WL 5180304, at *8.  In such cases, when there is no affirmative finding of malingering, an ALJ

---

[5]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89.  This requirement is very difficult to satisfy.  See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements.  SSR 16-3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective statement being rejected and the particular evidence in the record which purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation omitted).  "General findings are insufficient[.]"  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it.  See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

## 2.    Summary of Plaintiff's Testimony and Statements in Context of the Relevant Medical Record

Plaintiff testified that he stopped working on October 5, 2015, after he suffered a right foot fracture with torn ligaments.  (AR 45-46; see AR 278-80, 292-95 (initial doctor visits for this sports injury reporting right lateral cuneiform fracture and posterior tibial neuritis for which plaintiff was using crutches; it was recommended that plaintiff try weight bearing in a cam boot as tolerated)).

Plaintiff remained off work due to that injury and CRPS until April 2019, when he was able to return to full time work.  (AR 45-46; see AR 421 (March 1, 2019 treatment note reporting plaintiff had a pain flare up after playing basketball a couple weeks earlier; plaintiff then was applying for work and going to the gym and working out as tolerated)).

Plaintiff explained that for about a year after his injury he could not walk, for the next year he could only get around mainly by using a wheelchair, then he added in using crutches and a cane, and during all that time even sitting was extremely difficult because he had to prop up his foot.  (AR 46, 50-51; see AR 312-15 (November and December 2015 notes reporting plaintiff was ambulating with a cam boot and crutches); AR 626 (January 15, 2016 work status report from plaintiff's doctor anticipating that plaintiff would be unable to work from his injury until June 1, 2016); but see AR 310-11, 367-69 (February 2016 notes reporting plaintiff had a normal/stable gait and had been advised to discontinue using a cam boot, to use a hiking boot instead, and to use a night splint as tolerated); AR 309-10, 364 (March 2016 notes reporting plaintiff was wearing hiking boots and his gait was normal when observed, but he had some difficulty weight bearing on his right foot; he was to continue wearing hiking boots for stability and reduce physical activity until a repeat MRI); AR 379-88 (March, April, and May 2016 notes reporting normal gait but difficulty with right foot weight bearing); AR 614 (June 2016 note reporting plaintiff ambulated without assistance); AR 305-06 (July 2016 note reporting plaintiff was walking using a hiking boot, had walked more the prior weekend and tolerated his pain better, the severity of which he described as random and intermittent; on examination, plaintiff had right limb atrophy and possible bony fragment causing his pain)).[6]  Plaintiff estimated that he could sit for

---

[6]Despite reports that plaintiff was able to walk without an assistive device in 2016, plaintiff's pain management doctor Dr. Stephen H. Barkow provided a letter dated December 15, 2016, seeking approval for a wheelchair for plaintiff, stating:

(continued...)

about five minutes during that time.  (AR 51).  Plaintiff said he even had extreme pain while lying in bed with his foot propped on a pillow. (AR 46).  Plaintiff said he was still using a cane "a little bit" at the time of the hearing in August 2020. (AR 51).[7]

Plaintiff also said he had anxiety and depression from his injury affecting his ability to concentrate and think.  (AR 46 (stating, "my mind just was gone"); see also AR 105-06 (plaintiff's February 26, 2019 letter explaining his depression and anxiety as a result of his physical condition)).  Plaintiff was on several medications, including Vicodin which made him "out of it," and could barely get out of bed to attend doctor's appointments.  (AR 46-47, 50).

Plaintiff testified that during the time he was not working, he was living with his parents in a house with stairs and he went up and down those stairs only to go to doctor appointments; for everything else, he was "just upstairs."  (AR 48; but see AR 334-36 (February 2017 note reporting plaintiff was traveling to Ireland for the month of March and had a normal gait and normal muscle tone but difficulty weight bearing with his right foot); AR 565, 569 (August 2017 notes reporting plaintiff had increased his activity, began working two times a week for his dad,

---

[6](...continued)

[Plaintiff] was diagnosed with Chronic Regional Pain Syndrome of the right foot over a year ago.  He has progressive flare ups that inhibit his ability to walk.  It is medically indicated for patient to have wheelchair. . . for ambulation.  The CRPS of the right foot greatly inhibits his mobility and ability to ambulate. [Patient] has recently had implantation of a spinal cord stimulator and is still working on its coverage of pain. [Patient] has less pain when he stays off his right foot, thus a cane is not advisable.  Crutches have caused him biomechanical issues in the past. This patient would greatly benefit from the use of a wheelchair to aid in his treatment of CRPS.

(AR 611).

[7]The vocational expert testified that, if a person with the residual functional capacity the ALJ found were also required to use a cane, the person could do the jobs identified. (AR 54).

did aqua therapy three times a week, and was going to start school the next week);
AR 543, 555 (September 2017 notes reporting that plaintiff was attending school
and working a few days per week); AR 495 (November 2017 note reporting that
plaintiff was crossing his legs "at his desk at work" which was causing him back
and leg pain); AR 481, 485 (December 2017 notes reporting plaintiff was in
constant severe pain, in classes and stressed "during his finals," and planned to
travel to Montana for the December holidays); AR 473 (January 2018 note
reporting plaintiff had experienced "a lot of pain" the day earlier while at work);
AR 464, 468 (January 2018 notes reporting that plaintiff started back to school in
January and was getting used to sitting in classes for prolonged periods); AR 454,
459 (February 2018 notes reporting plaintiff was in school and "busy with work
and school"); AR 446, 450 (March 2018 notes reporting plaintiff was in school and
could not do a medication trial until the semester end in May); AR 439 (May 2018
note reporting that plaintiff was on break from school); AR 433 (August 2018
treatment note indicating that plaintiff started school that day)).  Plaintiff said that
during that time he was able to drive himself for "very short trips" to appointments
a "couple times" when his parents were unable to drive him.  (AR 48-49).[8]

---

[8]In a Function Report - Adult - Third Party form dated April 21, 2017, plaintiff's
girlfriend reported that plaintiff was in pain constantly, even sitting for prolonged periods
increased his pain, and he struggled with anxiety as a result.  (AR 198-205).  She reported that
plaintiff could cook quick/easy foods two or three days a week, do laundry, dishes, and "easy"
cleaning, could drive or ride in a car a few days a week, and shop in stores for essentials for 20
minutes to an hour at a time.  (AR 200-01).  He could read, watch television, play video games,
and spend time with friends/family/pets (who come to him).  (AR 202).  She estimated that
plaintiff could stand/walk for about 10 minutes before needing to rest for five to 10 minutes,
does well with instructions, gets along well with authority figures, but his anxiety and depression
had caused a "huge" change in plaintiff's behavior and life perspective.  (AR 203-04).  He then
was using a cane any time he walked, and he used a wheelchair when the amount of walking
would be too much for him.  (AR 204).

Plaintiff also completed a Function Report - Adult form dated April 21, 2017, reporting
similar limitations and issues.  (AR 210-18).  He reported that his injury and CRPS had caused
(continued...)

1

2   Plaintiff said he started getting better in October 2018, after he had an

3   electrical spinal cord stimulator implanted and had undergone 14 nerve root blocks,

4   which improved his pain and ability to walk unassisted and enabled him to stop

5   taking "mind altering" pain killers, all of which improved his mood and thinking.

6   (AR 47-48; <u>see</u> AR 297-302, 322, 324-29, 587-88, 599-603 (December 2015, and

7   February, March, April, June, and December 2016, June and October 2017, and

8   February 2018 lumbar sympathetic blocks by Dr. Barkow for CRPS); AR 320

9   (August, 2016 right spinal cord stimulator trial placement by Dr. Barkow); AR 321

10  (October 2016 dorsal root ganglion and gluteal stimulator placement by Dr.

11  Barkow); AR 594 (April 2018 note starting plaintiff on Suboxone treatment for

12  opioid use disorder)).  As noted above, plaintiff testified that he went back to full

13  time work in April 2019.  (AR 45-46).

14              **3.    Analysis**

15          The ALJ determined that plaintiff's "medically determinable impairments

16  could reasonably be expected to cause the alleged symptoms," but plaintiff's

17  "statements concerning the intensity, persistence and limiting effects of these

18  symptoms are not entirely consistent with the medical evidence and other evidence

19  in the record for the reasons explained in th[e] decision."  (AR 31).  The ALJ

20

21          [8](...continued)

22  him many issues including pain, spasm, swelling, anxiety, and depression with memory and
    concentration issues.  (AR 210, 217).  He reported spending his days reading, watching

23  television, doing "minor chores" including making easy quick meals, and occasionally getting

24  out of the house for "easy activities" like reading at the beach with his girlfriend.  (AR 211-14).

25          Plaintiff completed another Function Report - Adult form dated October 23, 2019,
    reporting that his condition severely impacted his ability to work "during the time of [his]

26  injury" such that he "would basically stay in bed all day."  (AR 235-43; <u>see also</u> AR 256-63

27  (similar report from plaintiff's mother dated October 24, 2019)).  He reported that he was barely
    able to move due to severe pain which prevented him from doing the simplest of tasks.  (AR 235,

28  243).

1   provided specific, clear, and convincing reasons supported by substantial evidence

2   to reach this determination.

3       The ALJ summarized plaintiff's allegations and testimony and found

4   plaintiff's statements about the intensity, persistence, and limiting effects of his

5   symptoms were inconsistent with the record as a whole, which reflected – contrary

6   to plaintiff's testimony that he could not walk for the first year following his injury

7   (at AR 46, 50-51) – that his foot injury had resolved/improved such that by July

8   2016, plaintiff could walk with hiking boots and better tolerate his pain.  (AR 31-

9   32 (citing, *inter alia*, AR 305)).  The ALJ also noted that treatment notes reflected

10  that plaintiff was able to travel to Ireland in March 2017, he was back in school

11  and working a few days a week by September 2017, he was traveling to Montana

12  for the December holidays in 2017, he reported working in January 2018, in

13  August 2018 plaintiff still was in school, and in March 2019 plaintiff was going to

14  the gym, playing basketball and working out as tolerated – at a time when plaintiff

15  had claimed he stayed in bed all day (at AR 237).  (AR 33 (citing AR 334, 421,

16  433, 473, 481, 555)).[9]

17      The ALJ appropriately relied on the lack of objective medical evidence to

18  support plaintiff's statements and testimony concerning his limitations.  See, e.g.,

19  Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole

20  basis for discounting pain testimony, it is a factor that the ALJ can consider in his

21  credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

22  ("While subjective pain testimony cannot be rejected on the sole ground that it is

23  not fully corroborated by objective medical evidence, the medical evidence is still a

24  relevant factor in determining the severity of the claimant's pain and its disabling

25  ───────────────

26      [9]As detailed above, contrary to plaintiff's counsel's assertion that there were only two
    instances in the record during the alleged disability period indicating plaintiff was at work (see
27  Plaintiff's Motion at 7), the record contains several mentions of plaintiff working during the
    alleged disability period.  See AR 454, 459, 473, 495, 543, 555, 565, 569.
28

effects."); SSR 16-3p, 2016 WL 1119029, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence. . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."). The ALJ's discussion in this case adequately demonstrates how the record findings showing plaintiff's improvement over time undermined plaintiff's specific allegations of disabling symptoms during the period he was not working.

The ALJ also appropriately relied on inconsistencies between plaintiff's extensive reported activities reflected in the medical record as compared to plaintiff's assertedly restricted daily activities during the time he was not working (*i.e.*, between October 2015 and April 2019) when plaintiff claimed he spent most of his time in bed. "Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for [giving less weight to] the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113 (citations omitted); see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014) (inconsistencies between alleged limitations and claimant's reported activities valid reason for giving less weight to claimant's subjective complaints) (citation omitted); SSR 16-3p, 2016 WL 1119029, at *7 (ALJ may determine that claimant's symptoms "are less likely to reduce his or her capacities to perform work-related activities" where claimant's subjective complaints are inconsistent with evidence of claimant's daily activities) (citing 20 C.F.R. § 404.1529(c)(3)). As the ALJ observed, plaintiff admitted to medical providers greater daily activities including walking without assistance, traveling, going to work and to school. The ALJ reasonably found that the ability to engage in this level of activity undermined plaintiff's testimony and statements

suggesting he was gravely disabled from the alleged onset date until he started full time work in April 2019.  See Valentine v. Commissioner, 574 F.3d 685, 693 (9th Cir. 2009) (claimant's admitted activities did not suggest that claimant could work, but did suggest that claimant was exaggerating the severity of claimant's limitations).

Accordingly, the ALJ provided specific, clear, and convincing reasons to discount plaintiff's subjective statements. The Court must uphold the ALJ's findings where, as here, they are reasonable and "supported by inferences reasonably drawn from the record."  Molina, 674 F.3d at 1111.  A remand or reversal on the basis of the ALJ's consideration of plaintiff's subjective statements and testimony is not warranted.

## B.     The ALJ Did Not Materially Err in Evaluating the Medical Opinion Evidence Concerning Plaintiff's Physical Limitations and Abilities

Plaintiff contends that the ALJ erred in determining plaintiff's residual functional capacity by rejecting treating physician Dr. Stephen Barkow's December 15, 2016 letter seeking approval for a wheelchair for plaintiff, which reported inhibited mobility/ambulation (see AR 611 (letter)), and instead relying on portions of the state agency physicians' opinions finding plaintiff capable of a range of sedentary work.  See Plaintiff's Motion at 8-11.

### 1.     Pertinent Law

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians." See 20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted).[10]

_____

[10]Since plaintiff filed his application before March 27, 2017, 20 C.F.R. § 404.1527 applies.  For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would

(continued...)

1  A treating physician's opinion is generally given the most weight, and may be

2  "controlling" if it is "well-supported by medically acceptable clinical and

3  laboratory diagnostic techniques and is not inconsistent with the other substantial

4  evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1527(c)(2); Revels v.

5  Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted).  In turn, an

6  examining, but non-treating physician's opinion is entitled to less weight than a

7  treating physician's, but more weight than a nonexamining physician's opinion.

8  Garrison, 759 F.3d at 1012 (citation omitted).

9      A treating doctor's opinion, however, is not necessarily conclusive as to

10  either a physical or mental condition or the ultimate issue of disability. Magallanes

11  v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  An ALJ may

12  reject the uncontroverted opinion of a treating source by providing "clear and

13  convincing reasons that are supported by substantial evidence" for doing so.

14  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

15  Where, as here, a treating source's opinion is contradicted by another doctor's

16  opinion, an ALJ may reject such opinion "by providing specific and legitimate

17  reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012

18  (citation and footnote omitted).

19      An ALJ may provide "substantial evidence" for rejecting such a medical

20  opinion by "setting out a detailed and thorough summary of the facts and

21  conflicting clinical evidence, stating his interpretation thereof, and making

22

23  ──────────────

24      [10](...continued)
   apply. 20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical

25  opinions and prior administrative medical findings, eliminated the use of the term "treating
   source," and eliminated deference to treating source medical opinions. See 20 C.F.R.

26  § 404.1520c(a); see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016); Woods v. Kijakazi, 32

27  F.4th 785, 792 (9th Cir. 2022) ("the revised social security regulations are clearly irreconcilable
   with our caselaw according special deference to the opinions of treating and examining

28  physicians on account of their relationship with the claimant.").

1  findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725

2  (9th Cir. 1998)) (quotation marks omitted).  An ALJ must provide more than mere

3  "conclusions" or "broad and vague" reasons for rejecting a treating or examining

4  doctor's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)

5  (citation omitted).  "[The ALJ] must set forth his own interpretations and explain

6  why they, rather than the [doctor's], are correct."  Embrey v. Bowen, 849 F.2d 418,

7  421-22 (9th Cir. 1988).

8  ## 2.    The ALJ's Consideration of the Opinion Evidence

9      In determining plaintiff's residual functional capacity, the ALJ

10  acknowledged Dr. Barkow's letter requesting approval for a wheelchair in

11  December 2016, observing Dr. Barkow's opinion that plaintiff's symptoms

12  inhibited his ability to walk, but gave the letter no weight because the record

13  showed that plaintiff's condition had improved such that he was able to ambulate

14  without an assistive device by that time.  (AR 34 (citing AR 611); see also AR 32

15  (ALJ discussing evidence of improvement prior to December 2016)).

16      The ALJ gave partial weight to the nonexamining state agency physician

17  opinions finding plaintiff capable of lifting and carrying 20 pounds occasionally

18  and 10 pounds frequently, standing and walking two hours in an eight-hour day,

19  and sitting six hours in an eight-hour day, as consistent with the record as a whole.

20  See AR 34 (citing AR 69-71, 87-89).  At the time of the initial review in April

21  2017, the state agency physician explained that a sedentary capacity with standing

22  and walking two hours a day would address plaintiff's right ankle injury, difficulty

23  with weight bearing, right knee tear, and back pain that was documented in the

24  medical record.  (AR 71).  By the time of reconsideration in October 2019, plaintiff

25  had admitted to returning to full time work as early as August 2019, which was

26  consistent with a light exertion level.  (AR 82).  The state agency physician

27  nonetheless affirmed the residual functional capacity from the initial review,

28  ///

1   concluding that there was no continuous twelve month period during which

2   plaintiff could not have tolerated sedentary activity.  (AR 89).

3      The ALJ declined to adopt additional postural and environmental limitations

4   the state agency physicians assigned (*i.e.*, (1) occasionally climbing ramps/stairs;

5   (2) never climbing ladders, ropes or scaffolds; (3) occasionally stooping, kneeling,

6   crouching, and crawling; (4) frequently balancing; (5) limited pushing and pulling

7   with the right lower extremity; and (6) avoiding exposure to extreme heat or cold,

8   vibration, or hazards) (see AR 69-71, 87-89), reasoning that plaintiff had

9   eventually managed his pain to the extent he was able to travel to Ireland and

10  Montana, attend school, and work, all while living in a two-story house where he

11  was able to go up and down stairs as needed, so these additional limitations were

12  not warranted.  (AR 34).

13                    **3.    Analysis**

14     The ALJ's reasoning for rejecting Dr. Barkow's letter and the portions of the

15  state agency physicians' opinions suggesting postural and environmental

16  limitations is sufficiently specific and supported by substantial evidence.

17     First, as the ALJ observed, Dr. Barkow's letter requesting approval for a

18  wheelchair arguably was inconsistent with plaintiff's reported ability to walk

19  without assistance wearing only hiking boots and better tolerating his pain as early

20  as July of 2016.  See AR 305.[11]  Such is a specific and legitimate reason for

21  discounting any suggestion that plaintiff needed a wheelchair to ambulate during

22  the alleged disability period.  See Burrell v. Colvin, 775 F.3d at 1140 ("[A]n ALJ

23  may discredit treating  physicians' opinions that are conclusory, brief, and

24  unsupported by the record as a whole or by objective medical findings") (citation

25  _____

26  [11]Dr. Barkow's own pain management treatment note from May 2016 stated that plaintiff
    was feeling stronger in physical therapy and had a normal gait but some difficulty weight
27  bearing.  (AR 379-80).  When Dr. Barkow gave plaintiff a nerve block in June 2016, he noted
    that plaintiff's pain was making it difficult for him to ambulate – he did not indicate that plaintiff
28  could not ambulate.  (AR 300).

omitted); <u>Houghton v. Comm'r of Soc. Sec. Admin.</u>, 493 Fed. App'x. 843, 845 (9th Cir. 2012) (holding that ALJ properly discounted medical opinions that were "internally inconsistent, unsupported by [the doctors'] own treatment records or clinical findings, [and] inconsistent with the record as a whole"); <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected treating physician's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined should be imposed on [claimant]"); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide clear and convincing reasons for ALJ to reject treating physician's opinion).

Second, as the ALJ observed, the postural and environmental limitations the state agency physicians found arguably were inconsistent with the observations in the record reflecting substantial abilities beginning as early as March 2017 – including the ability to travel to Ireland and Montana (in December), work, attend school, and climb stairs as needed.  <u>See</u> AR 334, 421, 433, 472, 481, 555.  The ALJ provided adequate reasoning for giving only partial weight to the state agency physician opinions.  An ALJ may reject a nonexamining physician's opinion, as here, "by reference to specific evidence in the medical record."  <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1244 (9th Cir. 1998) (citations omitted); <u>Chavez v. Astrue</u>, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009) (although not bound opinions of nonexamining physician, ALJ's decision may not ignore such opinions and "must explain the weight given to the opinions") (citations and quotation marks omitted).

Additionally, the ALJ properly could rely on the discounted state agency physician opinions as substantial evidence to support the ALJ's residual functional capacity determination.  <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining physician "may constitute substantial evidence when it is consistent with other independent evidence in the record").  Plaintiff cites to <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006), to suggest that the nonexamining state agency physicians' opinions, standing alone, do not

18

constitute substantial evidence.  See Plaintiff's Motion at 9, 11.  However, the Widmark footnote simply observes that a nonexamining physician's opinion alone cannot constitute substantial evidence for rejecting examining or treating physician's opinion, which is not applicable here.  Widmark, 454 F.3d at 1066 n.2 (citing Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)) (emphasis added).  Such an observation does not mean that a nonexamining opinion cannot serves as substantial evidence to support an ALJ's adverse decision.

To the extent any of the medical evidence is in conflict, it was the prerogative of the ALJ to resolve such conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  When evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision.  See Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); accord Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The Court will uphold the ALJ's rational interpretation of the evidence in the present case notwithstanding any conflicts in the record.  A remand or reversal on the basis of the ALJ's consideration of the medical evidence is not warranted.

## C.    The ALJ Did Not Materially Err at Step Two of the Sequential Evaluation Process by Finding Plaintiff's Mental Impairment(s) Non-Severe

Plaintiff also contends that the ALJ erred at step two of the sequential evaluation process by finding that plaintiff's mental impairments were non-severe.  See Plaintiff's Motion at 11-13.  The ALJ found plaintiff's mental impairments non-severe, reasoning that the record showed a lack of mental health treatment and an unremarkable psychiatric consultative examination.  (AR 29; see also AR 67-68, 85-86 (state agency physicians finding mental impairments "non-severe"); AR 641-44 (consultative examination finding no limitations)).[12]

---

[12]Plaintiff's counsel concedes that the record does not contain regular treatment notes for plaintiff's mental health treatment.  See Plaintiff's Motion at 12 & n.1 (noting counsel has been

(continued...)

Notwithstanding the ALJ's step two finding, the ALJ reportedly considered all of plaintiff's symptoms in determining plaintiff's residual functional capacity. (AR 30). Any error from failing to find plaintiff's mental impairments severe at step two therefore is harmless. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to list impairment at step two harmless error where ALJ accounted for any impairment-related limitations at step four); Lowery v. Colvin, 2014 WL 183892, *4 (D. Or. Jan. 14, 2014) ("In the Ninth Circuit, excluding a diagnosis from the list of severe impairments at step two is significant only if the impairment caused additional functional limitations not accounted for in the RFC assessment.") (citing Lewis, 498 F.3d at 911); see generally 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe'. . . when we assess your residual functional capacity.").

Plaintiff did not point to any specific limitations from his depression and anxiety other than his alleged inability to concentrate, think, or get out of bed at times when, as explained above, he admitted to medical providers that he was traveling, going to school, and working. Compare AR 46-47, 50, 105-06, 237 (plaintiff's statements about his limitations) with AR 334, 421, 433, 473, 481, 555 (notations in the record about travel, school, and work). Plaintiff also did not provide detailed medical records concerning his mental health treatment

///

---

[12](...continued)
unable to obtain plaintiff's mental health treatment records). The record contains only a Psychological Assessment for Pain Management/Clearance dated June 23, 2016 (AR 614), and a "Biobehavioral Progress Note" dated November 22, 2016, reporting that plaintiff had received cognitive behavioral treatment (AR 612). At his Complete Psychiatric Evaluation in December 2019, after plaintiff returned to work, plaintiff reported being able to work, do household chores, run errands, shop, cook, watch television, read, and meet up with friends. (AR 641-42). Mental status examination was within normal limits, his major depressive disorder was in remission, and he had no noted functional limits. (AR 643-44).

1  (see Plaintiff's Motion at 12 & n.1), and the available medical opinions suggested

2  that he would have no mental limitations.  See AR 67-68, 85-86, 643-44.

3        Plaintiff has not demonstrated that the record was ambiguous or otherwise

4  inadequate for the ALJ properly to evaluate the evidence concerning his mental

5  impairments.  The ALJ had no duty to develop the record regarding plaintiff's

6  mental impairments.  See McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011)

7  ("ALJ's duty to develop the record further is triggered. . . when the record is

8  inadequate to allow for proper evaluation of the evidence.") (citations and

9  quotation marks omitted).  The ALJ here gave great weight to the consultative

10  examiner and state agency physician opinions in finding plaintiff would have no

11  mental limitations, as consistent with the evidence of record. (AR 29).  Substantial

12  evidence supports the ALJ's assessment of plaintiff's functional limitations in the

13  decision, and any failure to find plaintiff's mental impairments severe at step two

14  was harmless.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of

15  examining physician based on independent clinical findings can provide substantial

16  evidence to support administrative conclusion of non-disability); Tonapetyan v.

17  Halter, 242 F.3d at 1149.  A remand or reversal on the basis of the ALJ's step two

18  determination is not warranted.

19  **V.    CONCLUSION**

20        For the foregoing reasons, the decision of the Commissioner of Social

21  Security is AFFIRMED.

22        LET JUDGMENT BE ENTERED ACCORDINGLY.

23  DATED:   September 8, 2022

24

25  _____
                           /s/
26                         Honorable Jacqueline Chooljian
27                         UNITED STATES MAGISTRATE JUDGE

28